596 P.2d 721

**CENTURY MEDICAL PLAZA, a California and Arizona limited partnership, and Dave J. Williams, general partner, Plaintiffs/Appellees/Cross-Appellants,**

**v.**

**Gerald B. GOLDSTEIN, M.D., Horacio Ore-Giron, M.D., C. J. Snider, M.D., Peter F. Ryers, M.D., Neurological Surgery of Tucson, P.C., Alan I. Cohn, M.D., Richard G. Flores, D.D.S., P.C., Jay Goldman, M.D., Wanda W. Torrey, M.D., James Torrey, M.D., Andrew W. Gaudielle, M.D., John A. Habra, M.D., Tucson Anesthesia, P.C., Gary L. Henderson, M.D., Richard A. Silver, M.D., Tucson Orthopaedic & Fracture Surgery Assoc., Ltd., William C. Farr, M.D., St. Mary's Hospital of Tucson, an Arizona Corporation, Defendants/Appellants/Cross-Appellees.**

No. 2 CA–CIV 3141.

Court of Appeals of Arizona, Division 2.

May 8, 1979.

Fish, Briney, Duffield, Miller, Young & Adamson, P. C., by Michael C. Young, Tucson, for plaintiffs/appellees/cross-appellants.

Murphy & Hazlett by Thomas M. Murphy, Tucson, for defendants/appellants/cross-appellees St. Mary's Hospital of Tucson.

Molloy, Jones, Donahue, Trachta, Childers & Mallamo, P. C., by Michael J. Meehan, Tucson, for all other defendants/appellants/cross-appellees.

## OPINION

HATHAWAY, Judge.

Appellees/cross-appellants, a limited partnership and its general partner, which own and operate an office building for medical professionals (hereinafter landlord), brought a declaratory judgment action seeking an interpretation and construction of a lease provision common to separate leases with appellants/cross-appellees, tenants of the building (hereinafter tenants). Ruling on tenants' motion for summary judgment on September 27, 1978, the trial court entered summary judgment for tenants on clause (a) and for landlord on clause (b). On October 26, 1978, a subclass of the tenants filed a notice of appeal from the summary judgment for the landlord, and on November 7, landlord filed a cross-appeal from the summary judgment for tenants. As to the subclass of tenants who appealed, the cross-appeal is timely; as to the remaining tenants, it is not timely, Rule 9(a), Arizona Rules of Civil Appellate Procedure, and the summary judgment in their favor is final. By the same token, because they are not parties to this appeal, the summary judgment for landlord is final as to them. *Christian v. Cotten*, 1 Ariz.App. 421, 403 P.2d 825 (1965); 5B C.J.S. Appeal and Error § 1920 (1958). As for the parties and issues properly before us, we affirm the judgment for tenants, but reverse the judgment for landlord and remand for further proceedings.

Landlord's predecessor in interest and tenants entered into the leases without discussing the disputed provision, which states:

"TAXES AND MAINTENANCE. Lessee shall pay to Lessor upon receipt of a statement therefor as additional rent such proportion of the following items as the area of space rented by Lessee bears to the total net rentable area of the building: (a) any increase in cost to the Lessor of all utilities, janitorial services, air conditioning and guard service, and hazard insurance over and above that incurred *during the first full calendar year following the commencement date of this lease,* and (b) any increase in the city, county and special district real estate taxes *in excess of the real estate taxes levied* against the entire real property, including the building, *for the tax fiscal year following the first Monday in January of the year in which the building was at least 90% completed.*" (Emphasis added)

As for clause (a), the dispute concerns the meaning of the phrase, "full calendar year." The trial court rejected landlord's interpretation of the phrase to mean a 365 day period beginning the date of the lease in favor of tenants' interpretation of the phrase to mean a 365 day period beginning January 1st and ending December 31st. Tenants' interpretation expresses the ordinary meaning of the phrase. Moreover, in landlord's interpretation, the word "calendar" is superfluous. Although the parties to a contract may use words in other than their ordinary sense, when one party uses the words with their ordinary meaning and the other party has reason to know of that meaning, we interpret the contract in accordance with the ordinary meaning. *Vinnell Corp. v. State ex rel. Bob Skousen Contractor, Inc.*, 109 Ariz. 87, 505 P.2d 547 (1973); 3 A. Corbin, Contracts, Sec. 535 at 19–20 (1960). In this case, landlord had reason to know of tenants' meaning because it is the ordinary meaning and no absurdity results from this interpretation. That tenants who enter into leases early in the year have longer grace periods than those who do so later in the year constitutes an economically disadvantageous consequence to landlord, not an absurdity. Because interpretation of an unambiguous contract is a question of law for the court, *Hadley v. Southwest Properties, Inc.*, 116 Ariz. 503, 570 P.2d 190 (1977), and the trial court correctly interpreted clause (a), it properly granted summary judgment for tenants as to that clause.

Before turning to the substance of the dispute as to the meaning of clause (b), we note that the trial court granted summary judgment for landlord although only tenants had moved for summary judgment. The weight of authority allows summary judgment for the non-movant, provided the movant had a full opportunity to show there is a material factual dispute under the adversary's theory and that the non-movant is not entitled to judgment as a matter of law. Wright & Miller, Federal Practice & Procedure: Civil Sec. 2720 at 467–72 (1973). A party may consistently argue that if his theory is accepted, there are no material factual disputes and he is entitled to judgment as a matter of law, but that if his theory is rejected, there are factual disputes or his opponent is not entitled to judgment as a matter of law. Wright & Miller, supra, at 461–64.

The substantive dispute centers on the meaning of the phrase, "in excess of the real estate taxes levied . . . for the tax fiscal year following the first Monday in January of the year in which the building was at least 90% completed." Tenants argue that because the intent of the parties was to allocate to tenants increases in tax liability over a base year tax liability for a 90% completed building, the ambiguous phrase should be interpreted to mean the period beginning January 1st and ending December 31st for which taxes were first assessed on a completed building. Although tenants' proposed measure of tax liability more accurately defines the base year tax liability than the measure used in the contract, simply because the measure used in the contract requires interpretation does not justify substituting a measure to which the parties did not agree. It is not our province to rewrite the agreement. *Shattuck v. Precision-Toyota, Inc.*, 115 Ariz. 586, 566 P.2d 1332 (1977). Because tenants based their motion for summary judgment on this interpretation, the trial court properly denied the motion.

On appeal, landlord has abandoned the claim that in this context a tax fiscal year is other than a calendar year. The only remaining question is the meaning of the words "90% completed." Landlord contends that because tenant improvements in a professional building are installed to suit the needs of each tenant, the words "90% completed" do not refer to installation of individualized tenant improvements. We agree that in the context of an office building for professionals and for purposes of establishing a base year tax liability, landlord's interpretation expresses the intent of the parties. This special context, however, does not require a further departure from the ordinary meaning of the words. "90% completed" means that all construction was 90%

completed except for the individualized tenant improvements.

■ Given this interpretation, summary judgment for landlord was improper because material facts are in dispute. In opposition to tenants' motion, landlord submitted the affidavit of a city building inspector affirming that the building was 100% completed on December 6, 1974. In reply, tenants submitted an affidavit by the same inspector affirming that as of December 6, 1974, only the "shell" of the building was completed.[1] It therefore is unclear exactly how complete the building was on December 6, 1974. Because the affidavits are insufficient to determine when the building was 90% completed in the sense the parties intended, summary judgment for landlord was improper.

As to the parties properly before us, summary judgment for tenants on clause (a) is affirmed and summary judgment for landlord on clause (b) is reversed and remanded for further proceedings.

RICHMOND, C. J., and JACK G. MARKS, Superior Court Judge, concur.

NOTE: Judge LAWRENCE HOWARD having requested that he be relieved from consideration of this matter, Judge JACK G. MARKS was called to sit in his stead and participate in the determination of this decision.

---

1. For the first time on appeal, landlord argues that the reply affidavit was inadmissible because it was not served until the date of the hearing. Assuming Rule 56(c), Arizona Rules of Civil Procedure, 16 A.R.S., applies to reply affidavits, landlord's failure to object to the admission of the affidavit in the trial court waives the error. See *Hale v. Brown*, 84 Ariz. 61, 323 P.2d 955 (1958).