NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

BERGLIND SVANSDOTTIR, *Petitioner/Appellant*,

*v.*

BALDUR JOHNSEN, *Respondent/Appellee*.

No. 1 CA-CV 20-0269 FC
FILED 5-13-2021

Appeal from the Superior Court in Maricopa County
No. FN2018-091785
The Honorable Suzanne S. Marwil, Judge

**AFFIRMED IN PART; REMANDED IN PART**

COUNSEL

Dickinson Wright PLLC, Phoenix
By Marlene A. Pontrelli, Denise H. Troy
*Counsel for Petitioner/Appellant*

Scott L. Patterson LLC, Tempe
By Scott L. Patterson

Steven N. Cole LLC, Tempe
By Steven N. Cole
*Co-Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Chief Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Kent E. Cattani and Judge Samuel A. Thumma joined.

---

**S W A N N**, Chief Judge:

¶1        Berglind Svansdottir ("Wife") appeals several provisions of the decree dissolving her marriage to Baldur Johnsen ("Husband"). Finding no abuse of discretion, we affirm the judgment but remand for amendments to the decree as directed by this decision.

**FACTS AND PROCEDURAL HISTORY**

¶2        Husband and Wife are both Icelandic citizens. They married in Nevada in 2001 and resided in Arizona. Wife filed for dissolution of marriage in 2018. By that time, Husband and Wife had debts and assets in both Iceland and the United States, including a condo in Iceland. The parties agreed to a pretrial sale of the condo. They placed the proceeds of the sale—approximately $80,000 USD, or "the Condo Holdback"—in escrow pending the superior court's division of assets and debts. Before closing the sale of the condo, however, Husband used $36,969 of the proceeds to pay off an overdraft loan secured by a lien.

¶3        The community's major assets were the equity in their United States residence and the couple's retirement accounts, valued cumulatively at approximately $380,000. The community also had significant consumer debt and Wife's student loan debt. Both parties testified at trial. Husband reported his annual income to be approximately $225,000. Wife, although previously an orthopedic nurse in Iceland, did not work for most of the marriage. Additionally, a financial expert testified as to Wife's reasonable expenses.

¶4        Wife asserted that Husband engaged in marital waste by spending money on other women and in investing nearly $105,000 in a "get rich quick scheme." Before the end of the marriage, Husband invested $104,595.83 in the Warburg-Stuart Management Company (which the parties call the "Warburg Investment"). However, the court valued the Warburg Investment at zero at the time of trial.

2

¶5        The superior court equally divided the retirement accounts and gave Wife credit for her share of the home equity.  The court awarded Wife an equalization payment of $50,000; $3,000 per month in spousal maintenance for two years; and $25,000 in attorney's fees.  Wife moved to amend or alter the decree citing several alleged errors, including the court's failure to specifically state its findings related to their Icelandic pensions.  The court denied the motion and instead held that the parties' full agreement concerning the distribution of the Icelandic pension was "put on record and not stated word for word in the Decree," and directed the parties to consult the record if they "require the precise verbiage."  Wife appeals.

## DISCUSSION

¶6        Wife asserts the superior court abused its discretion in determining the amount of spousal maintenance and attorney's fees, and in its division of community property and debt.

I.        THE COURT DID NOT ABUSE ITS DISCRETION IN ITS AWARD OF SPOUSAL MAINTENANCE.

¶7        Wife first argues that the superior court erred by "limiting [her] award of spousal maintenance."   Wife requested a spousal maintenance award of $5,000 per month for five years.  Husband did not dispute Wife's entitlement to spousal maintenance under A.R.S. § 25-319(A), but disagreed with her requested amount.  After a review of the statutory factors, the superior court awarded Wife $3,000 per month for a period of two years.

¶8        The amount and duration of spousal maintenance is determined pursuant to A.R.S. § 25-319(B).  The court must consider thirteen factors, including the standard of living during the marriage, each spouse's age, employment history and ability to work, and the financial abilities and resources of each spouse.  *Id.* at (1)–(13).  On review, we examine an award of spousal maintenance for abuse of discretion.  *Cullum v. Cullum*, 215 Ariz. 325, 354, ¶ 9 (App. 2007).  We will affirm the superior court's spousal maintenance award if there is any supporting evidence.  *Helland v. Helland*, 236 Ariz. 197, 202, ¶ 22 (App. 2014).

¶9        The record does not support Wife's contentions that the court failed to consider her monthly expenses, age, work experience, and income potential.  Wife also argues that the court did not consider the comparative financial resources of the spouses because the $3,000 maintenance award leaves her with a monthly shortfall while Husband has a high paying job and could afford a greater amount.

¶10 The superior court is in the best position to determine credibility and the weight to give conflicting evidence. *See Gutierrez v. Gutierrez*, 193 Ariz. 343, 347, ¶ 13 (App. 1998). We will not reweigh the evidence or substitute our opinions for the superior court's findings. *Id.* Here, Wife's testimony supported the $3,000 maintenance award the court granted. Wife did not prove any current limitations on her ability to work; in fact, Wife testified that she expected to work in the public health field as an epidemiologist or a nurse and to earn $30,000 per year in addition to full medical benefits. The superior court, as the ultimate factfinder, was free to adopt or reject Wife's testimony and the testimony of her expert. *Id.* Moreover, the superior court's comparative analysis of the parties' relative financial positions was not an abuse of discretion. The court may consider the ability to earn, rather than actual earnings, in determining spousal maintenance. *Williams v. Williams*, 166 Ariz. 260, 266 (App. 1990).

¶11 In its consideration of the A.R.S. § 25-319(B) factors, the court noted Wife's prior nursing experience and that she was just a few credits short of her master's degree in public health. The court found that spousal maintenance would give her time to secure her Arizona nursing license or arrange for any training necessary to obtain appropriate employment. Spousal maintenance is meant to be a bridge to Wife's own financial independence. *See Schroeder v. Schroeder*, 161 Ariz. 316, 321 (1989). As the minute entry evidences the court's consideration of each of the statutory factors and the record supports those findings, the court did not abuse its discretion in determining the spousal maintenance award.

II. THE COURT ERRED IN ITS DIVISION OF THE WARBURG INVESTMENT AND THE ICELANDIC PENSION, BUT WE DETECT NO OTHER ERROR.

¶12 Wife next asserts that the court's division of the Condo Holdback, the Warburg Investment, and her student loans were "against the weight of the evidence." In a dissolution, the court must divide the community property and obligations equitably. *See* A.R.S. § 25-318; *Flower v. Flower*, 223 Ariz. 531, 534–35, ¶ 12 (App. 2010). Property characterization is a question of law we review de novo. *Helland*, 236 Ariz. at 199, ¶ 8. We view the facts in the light most favorable to upholding the decree. *See Bell-Kilbourn v. Bell-Kilbourn*, 216 Ariz. 521, 522, ¶ 2 n.1 (App. 2007).

A. Overdraft Debt and the Condo Holdback

¶13 Wife claims that she is due an additional $18,484.50 from the Condo Holdback, which is half of the $36,969 of the condo sale proceeds

that Husband used to pay off an overdraft debt secured by a lien on the condo. Wife argues that the overdraft debt arose after the date of separation from an initial overdraft debt of $14,053 while the parties were married.

¶14 Debts incurred during a marriage are presumed to be community debts. *Schlaefer v. Fin. Mgmt. Servs., Inc.*, 196 Ariz. 336, 341, ¶ 18 (App. 2000). And the spouse seeking to avoid debt liability bears the burden of rebutting that presumption by a standard of clear and convincing evidence. *Id.* Moreover, a spouse who voluntarily pays off community debt to maintain community assets, even after the filing of a petition for dissolution, is entitled to reimbursement. *Bobrow v. Bobrow*, 241 Ariz. 592, 596, ¶¶ 19–20 (App. 2017).

¶15 Here, the record does not clearly show that the court erred in determining that the debt was community debt. The court specifically found that Husband used the proceeds to "pay a community obligation and that should not be offset from his portion of the escrow proceeds." While it is true, as Wife argues, that the community is deemed to end when the petition for dissolution is served, *see* A.R.S. § 25-211(A)(2), debt is still community debt if it is incurred during the marriage. *Schlaefer*, 196 Ariz. at 341, ¶ 18. Husband testified that the September overdraft was the result of Wife stopping the refinancing deal of the Icelandic condo. Wife argues on appeal that Husband "did not present a single shred of documentary evidence or other proof to the trial court regarding how this loan was spent." But Wife likewise testified that she "stop[ped] the refinance" of the condo which resulted in a lien attached to the condo, in an amount "like seven million, Icelandic Krona." The superior court is in the best position to assess and resolve conflicting evidence and we accept its factual findings absent clear error. *Kelsey v. Kelsey*, 186 Ariz. 49, 51 (App. 1996). Here, we detect no clear error, so the court's reimbursement of Husband's payment and the division of the Condo Holdback is affirmed.

B.    The Warburg Investment

¶16 Wife next contends the court erred when it allocated the Warburg Investment—valued at zero—solely to Husband. Before the end of the marriage, Husband invested $104,595.83 in the Warburg-Stuart Management Company. Wife argued at trial that the Warburg Investment was marital waste. On appeal, she asserts that she should receive $52,298 as reimbursement of her half of the expended community funds, or, in the alternative, half of the benefit from the investment.

¶17 Under A.R.S. § 25-318(C), an equitable division of property requires the court to consider any "excessive or abnormal expenditures, destruction, concealment or fraudulent disposition of community" property. Spouses have equal management and disposition rights over community property and have equal power to bind the community, including in investments. A.R.S. § 25-214(B).

¶18 Wife, as the party alleging marital waste, had "the burden of making a prima facie showing of waste." *Gutierrez*, 193 Ariz. at 346, ¶ 7 (App. 1998). That showing requires more than one party's disapproval of an investment; marital waste occurs when "one spouse has wasted or dissipated marital assets." *Helland*, 236 Ariz. at 201, ¶ 17. We review a determination of whether there was marital waste for abuse of discretion. *See Kline v. Kline*, 221 Ariz. 564, 573, ¶ 35 (App. 2009).

¶19 Husband was authorized to make the Warburg Investment. *See* A.R.S. § 25-214(B). Both parties testified at trial that the Warburg Investment was worthless. The superior court then held:

> the value of the Warburg investment is $0.00 . . . Just as Wife would be entitled to any gains from this investment, she must share in its losses. It would be inequitable to have Husband reimburse Wife half the amount originally invested ($104,595.83).

¶20 Wife's initial claim that she should be reimbursed for half of the value of the Warburg Investment fails. Wife does not dispute that the investment was made with community funds, and so the failure of the investment made with those community funds is a community failure. *See* A.R.S. § 25-211(A). But, if the Warburg Investment ever were to become profitable, equity requires that benefit be shared. Accordingly, we direct the superior court to hear testimony on the division of the Warburg Investment.

C.    Wife's Student Loans

¶21 The court assigned to Wife her two student loans as her separate debt, including a loan of nearly $9,000 and an $80,000 balance on a loan from her pre-marital education in Iceland. Wife asserts the pre-marital loan grew substantially during the marriage because Husband refused to use community funds to make payments. On appeal, she argues that the community should be responsible for that increase. Husband is not liable for Wife's pre-marital debt absent an agreement to the contrary. *See* A.R.S. § 25-215(A); *Hines v. Hines*, 146 Ariz. 565, 567 (App. 1985). Wife cites

no legal authority to support her argument, nor are we aware of any. The court's assignment of the debt is affirmed.

### D. Icelandic Pensions

**¶22** The court denied Wife's request to alter the decree to include the language she asserts is necessary for an Icelandic court to facilitate the division of those accounts as agreed to by the parties. To the extent that she can demonstrate legal need, we direct the superior court to enter such orders.

### E. Currency Issues

**¶23** Wife argues the decree also should be amended to account for fluctuations in the Icelandic Krona relative to the U.S. Dollar. As indicated in the decree, the superior court made the property division with the valuation information it had at the time. We review valuation dates for abuse of discretion and we will affirm the court's selection of a valuation date if the result is fair. *Sample v. Sample*, 152 Ariz. 239, 242–43 (App. 1986). There was no abuse of discretion by the superior court and no unfairness in the result. And Wife waived this issue by failing to raise it with the superior court. *See Premier Fin. Servs. v. Citibank (Arizona)*, 185 Ariz. 80, 86 (App. 1995).

## III. THE SUPERIOR COURT'S ATTORNEY'S FEES AWARD WAS SUPPORTED BY SUFFICIENT EVIDENCE.

**¶24** Finally, Wife challenges her award of $25,000 in attorney's fees after trial because the court did not grant her an award of all of her incurred fees. We review a fee award for an abuse of discretion. *MacMillan v. Schwartz*, 226 Ariz. 584, 592, ¶ 36 (App. 2011).

**¶25** A.R.S. § 25-324(A) requires the superior court to examine both the financial resources and the reasonableness of each party's positions. Here, the record shows that the superior court found Husband had greater financial resources and sufficient resources available to contribute toward Wife's attorney's fees and costs. The court held that both parties acted unreasonably during the litigation, but awarded Wife's attorney's fees to Husband. Given the party's positions, we find that the court's award of $25,000 of Wife's attorney's fees was not an abuse of discretion.

**ATTORNEY'S FEES ON APPEAL**

**¶26**      Both Husband and Wife request attorney's fees pursuant to A.R.S. § 25-324(A).  Having considered the statutory factors, including the parties' relative financial resources, we award Wife her reasonable attorney's fees on appeal in an amount to be determined after compliance with ARCAP 21.

**CONCLUSION**

**¶27**      For the above-stated reasons, we affirm the judgment and remand for amendments to the decree as directed by this decision.



AMY M. WOOD • Clerk of the Court
FILED:      AA